**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| DANIEL HASSAN FICK, | : | |
| Plaintiff, | : | |
| vs. | : | CA 18-0008-TM-MU |
| ALABAMA STATE DEPARTMENT OF | : | |
| EDUCATION[1] and BOARD OF SCHOOL | | |
| COMMISSIONERS OF MOBILE | : | |
| COUNTY, | | |
| | : | |
| Defendants. | | |

**REPORT AND RECOMMENDATION**

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S), on the Defendants' motions to dismiss (Docs. 39 & 41), Plaintiff's responses in opposition (Docs. 45 & 46),[2] and Plaintiff's motion for equitable tolling (Doc. 50). Based on the contents of these pleadings and all other relevant pleadings in this matter, the Magistrate Judge **RECOMMENDS** that the Defendants' motions to dismiss (Docs. 39 & 41) be **GRANTED** and that Plaintiff's action be **DISMISSED WITH PREJUDICE**, given that it is indisputably time-barred.

---

[1]     This is the proper name of the Defendant identified in Plaintiff's amended complaint (*see* Doc. 35) as the Alabama State Board of Education.

[2]     The Defendants were extended the opportunity to file a reply to any response in opposition filed by Plaintiff (*compare* Doc. 40 (ordering Defendant ALDOE to file its reply by not later than September 24, 2018) *with* Doc. 43 (ordering Defendant Board of School Commissioners to file its reply not later than September 26, 2018)); however, neither Defendant filed a reply (*see* Docket Sheet).

## PROCEDURAL BACKGROUND

Plaintiff Fick's August 9, 2018 amended complaint (Doc. 35) is the operative pleading in this case, *see, e.g., Rosa v. Florida Dep't of Corrections,* 522 Fed.Appx. 710, 714 (11th Cir. June 26, 2013) ("Under the Federal Rules of Civil Procedure, 'an amended complaint supersedes the initial complaint and becomes the operative pleading in the case.'" (quoting *Krinsk v. SunTrust Banks, Inc.,* 654 F.3d 1194, 1202 (11th Cir. 2011)). In that amended complaint, Plaintiff briefly sets forth six instances of bullying, harassment or abuse he allegedly suffered at the hands of other students while attending various public schools in Mobile County from 1997 through 2001, as well as the manner in which various teachers or the administrative staff at the schools responded (or failed to respond) to the conduct described (Doc. 35, at 2-3).[3] Plaintiff avers that the conduct described in his complaint contravenes the Fourteenth

---

[3]    Fick avers that when he was in the Seventh Grade, one of his teachers had him assist with the logging of grades in the teacher grade book to ensure his safety during class and, that same year, another student slammed his head into the gymnasium wall and floor a total of six times but was not disciplined for this act of violence. (Doc. 35, at 2.) While in the Ninth Grade, Fick alleges he complained to the administrative staff about one homosexual male student sexually harassing him (by touching him on the buttocks) and about another homosexual male student following him home, both of whom were expelled from school. (Doc. 35, at 2.) That same year, Fick contends he was bullied during Biology class and the teacher simply told everyone to "quiet down." (*Id.* at 3.) Plaintiff goes on to aver that when he was in the Tenth Grade, the bullying he endured during his Algebra class "cost" him a passing grade. (*Id.* ("There would be times I would be physically hit[] and/or crudely insulted by a student and the teacher would just overlook the incidents."); *see also id.* ("During the tenth grade ('00-'01)[,] I was hospitalized for two weeks[] in the Baptist Adolescent Stress Unit[] and received a diagnosis for anxiety.")).  It is clear from the attachments to Fick's response in opposition to the Board of School Commissioners of Mobile County's motion to dismiss that he attended Scarborough Middle School during his 7th grade year (Doc. 46, Exhibit D) and Shaw High School for his 9th and 10th grade years of education (*see id.* at Exhibits A & B).

Amendment's Equal Protection Clause (Doc. 35, at 2) and, as a result, he seeks "psychological and physical" damages in the amount of $3,000,000 (*id.* at 4).[4]

The Alabama State Department of Education ("ALDOE") filed its motion to dismiss on August 24, 2018, therein claiming it is entitled to the dismissal of the amended complaint for the following reasons: (1) it is absolutely immune from suit and entitled to dismissal of Plaintiff's complaint for want of subject-matter jurisdiction in accordance with Fed.R.Civ.P. 12(b)(1); (2) Plaintiff's § 1983 claims are time-barred; and (3) to the extent necessary, Plaintiff's amended complaint fails to set forth sufficient facts to state any claims against it and, therefore, is due to be dismissed, in accordance with Fed.R.Civ.P. 12(b)(6). (*See* Doc. 39, at 1-5.). Defendant Board of School Commissioners of Mobile County filed its motion to dismiss on August 28, 2018, contending that it too is entitled to dismissal of the amended complaint because Plaintiff's claims are barred by the applicable statute of limitations and because the amended complaint otherwise fails to set forth sufficient facts to state any claims against it and, therefore, is due to be dismissed, in accordance with Fed.R.Civ.P. 12(b)(6). (*See* Doc. 41, at 1; Doc. 42, at 1-4.)

---

[4]     The first paragraph of Mr. Fick's amended complaint identifies the Court's jurisdiction as federal question jurisdiction (*see* Doc. 35, at 1). *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Mr. Fick, however, does not identify anywhere in his amended complaint the statutory vehicle through which he may be awarded the $3,000,000 he has requested (*see* Doc. 35) and, therefore, as explained below, the undersigned construes Plaintiff's claims against the Defendants as arising under 42 U.S.C. § 1983 and under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. *See Fitzgerald v. Barnstable School Committee,* 555 U.S. 246, 258, 129 S.Ct. 788, 797, 172 L.Ed.2d 582 (2009) ("[W]e conclude that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools, or a substitute for § 1983 suits as a means of enforcing constitutional rights. Accordingly, we hold that § 1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools.").

The undersigned reads Fick's opposition in response to the motion to dismiss filed by ALDOE as urging this Court to disregard the movant's reliance on its proffered statute-of-limitations and sovereign immunity defenses because his mother trusted that the Defendants would provide him with an education in a safe environment each time she registered him for school in Mobile County and, instead, because of corruption at the highest levels of the state school system,[5] he was made to suffer through the conduct described in his controlling complaint—due, perhaps, in no small measure to his "family finances, family education, and living status"—and, as a result, should be able to recover money damages because he was not allowed to obtain the same level of education as, for example, "school officials[.]"   (*See* Doc. 45, at 1-3). Plaintiff also seems to be suggesting that the Defendant's argument that he has stated no claims or facts against it is an exercise in "avoidan[ce] in an attempt to prevent justice for the Plaintiff." (*Id.* at 4.) Finally, the undersigned reads Fick's two references to *Lovens v. Pleasant Hill* (*see id.* at 2 & 3 (no pinpoint citation given)) as his suggestion that his claims also arise under Title IX (*see id.*).

In responding to the motion to dismiss filed by the Board of School Commissioners of Mobile County, Fick makes reference to and attaches various school records—primarily, report cards—as support for the "toll" caused him by the harassment and bullying he suffered at the hands of mostly unidentified fellow students (*see* Doc. 46 & Exhibits A-D), specifically, that he was "forced to quit or it very well could have cost me my life[]" (Doc. 46, at 3) because Defendants did not provide him with a safe

---

[5]       In his response, Plaintiff avers that Don Siegelman, who was Governor of Alabama during the years 1999-2001, was *ex officio* President of the State Board of Education and, in 2006, "was convicted of charges that describe unethical practices." (Doc. 45, at 3.)

classroom environment despite their responsibility to do so (*see id.* at 1-2). Fick concludes this response with the observation that "one side is telling the truth, and the other side is focused on what is available to avoid it." (*Id.* at 4.) This last comment is no doubt directed in large measure to the movant's statute-of-limitations defense, which Fick references will be the subject of a separate motion. (*See id.* at ¶ 2 ("In response to the heightened concern of my claim being barred by a statute of limitations: [Motion to be filed]")).[6]

## CONCLUSIONS OF LAW

**A.** **Pleading Standard.** The sufficiency of Plaintiff's claims to proceed beyond the pleading stage, and into discovery, is governed by the plausibility standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and further detailed in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In *Twombly,* the United States Supreme Court expressly abrogated the *Conley v. Gibson,* 355 U.S. 41 (1957) "no set of facts" pleading standard, holding that test "has earned its retirement" and "is best forgotten." *Twombly*, 550 U.S. at 563, 127 S.Ct. at 1969; *Simpson v. Sanderson Farms, Inc.,* 744 F.3d 702, 714 (11th Cir. 2014) ("[T]he Supreme Court categorically retired [the no set of facts test] in *Twombly*.").

Post *Twombly,* "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

---

[6]     Fick makes no suggestion that the Board of School Commissioners of Mobile County has improperly "read" or "viewed" his Equal Protection claims as arising under § 1983. (*See* Doc. 46.) However, Fick did file his promised motion on September 27, 2018, a motion for equitable tolling (Doc. 50), the contents of which will be addressed later in this opinion.

elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. The Court made clear that to satisfy the requirements of Fed.R.Civ.P 8(a) "something beyond the mere possibility [of an entitlement to relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people[.]" *Id.* at 557-58, 127 S.Ct. at 1966 (internal quotation marks omitted; citations omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1254 (11th Cir. 2012) (citations omitted), *cert. denied,* 568 U.S. 1088, 133 S.Ct. 856, 184 L.Ed.2d 656 (2013).

The Court directed that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558, 127 S.Ct. at 1966 (internal quotations marks and ellipses omitted; citations omitted). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]" *Id*. at 559, 127 S.Ct. at 1967. "[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases…[;]it is only by taking care to require allegations that reach the level [of showing a plausible entitlement to relief] that we can hope to avoid the potentially enormous expense of discovery[.]" *Id.*

The Eleventh Circuit has likewise emphasized the importance of only allowing plausible claims to proceed beyond the pleading stage: "Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) together establish a notice-pleading standard that is

applied, in a context-specific manner, with the recognition that the imposition of litigation costs must be justified at the threshold by the presence of factual allegations making relief under the governing law plausible, not merely speculative." *ABB Turbo Sys. AG v. Turbousa, Inc.* 774 F.3d 979, 984 (11th Cir. 2014); *see Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 & 1367-68 (11th Cir. 1997) (recognizing that "[d]iscovery imposes several costs on the litigant from whom discovery is sought[]" and "discovery imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes."); Fed.R.Civ.P. 1 (recognizing that the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In *Iqbal,* the Supreme Court gave additional definition to the Rule 8(a) analysis framed in *Twombly*. The Court explained that under *Twombly,* "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679, 129 S.Ct. at 1950. Courts do not "'accept as true a legal conclusion couched as a factual allegation[.]'" *Id*. at 678, 129 S.Ct. at 1950 (citation omitted); *see also id.* at 678, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[.]").

The *Iqbal* Court made clear that "[t]he pleading standard Rule 8 announces…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678, 129 S.Ct. at 1949 (internal citations omitted).  Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. at 1950 (brackets and citation omitted). Therefore, dismissal of a factually insufficient complaint is required because "Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79, 129 S.Ct. at 1950.

In *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010), the Eleventh Circuit Court of Appeals distilled the *Twombly/Iqbal* pleading standard into a functional "two-prong approach" for the evaluation of the sufficiency of a plaintiff's pled allegations: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (citation omitted). The Eleventh Circuit also explained: "Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (citation omitted).

Additionally, it is well-established that dismissal is required when the factual averments in a complaint affirmatively foreclose the existence of a plausible entitlement to relief. *See, e.g., Villarreal v. R.J. Reynolds Tobacco Co.,* 839 F.3d 958, 971 (11th Cir. 2016) ("A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling."), *cert. denied,* ___ U.S. ___, 137 S.Ct. 2292, 198 L.Ed.2d 724 (2017); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."). "[A] plaintiff can plead himself out of court. If he alleges facts that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (internal citations omitted).

**B.    Fick's Constitutional Claims, 42 U.S.C. § 1983, and 20 U.S.C. § 1681.**

In this action, Fick seeks an award of money damages for purported violations of his Fourteenth Amendment equal protection rights (Doc. 35, at 2-3). *See* U.S. CONST. amend. XIV, § 1 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."). And while he nowhere specifically invokes it in his amended complaint filed on August 9, 2018 (*see* Doc. 35), the undersigned finds that Fick's claims "fall under 42 U.S.C. § 1983, which provides a remedy[7] when [a] person acting under color of law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States." *Franklin v. Arbor Station,* 2011 WL 1539759, *2 (M.D. Ala. Apr. 21, 2011) (footnote added), citing 42 U.S.C. § 1983;

---

[7]    "Section 1983 is a remedial statute in that it creates a cause of action for a violation of constitutional and federal rights." *Hines v. Reed,* 170 F.Supp.2d 1200, 1204 n.2 (S.D. Ala. Apr. 2, 2001).

*compare id. with Middleton v. Cruce,* 2014 WL 2117177, *2 (N.D. Fla. May 21, 2014) ("Construed liberally as is required for pro se litigants, Plaintiff's amended complaint is deemed to allege claims under § 1983 for violations of her constitutional rights and violations of federal law." (footnote omitted)); *see* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .").[8]  In addition, in light of Fick's response in opposition to ALDOE's motion to dismiss (*see* Doc. 45, at 2), as well as the very nature of his description of the student-on-student harassment set forth in the controlling complaint (Doc. 35), the undersigned would be remiss in failing to liberally read the amended complaint as asserting claims under Title IX. *Compare, e.g., Doe v. Brimfield Grade School,* 552 F.Supp.2d 816, 822 (C.D. Ill. 2008) ("The school seems to argue that Title IX may not cover same-sex harassment, noting that the Supreme Court has not specifically held so. [] However, the Supreme Court held in *Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), that same-sex harassment is covered under Title VII. Title VII cases have been relied on to support rulings under Title IX. . . . The school concedes that '[t]he lower federal courts have generally concluded that

---

[8]      It need be noted that while "[t]he Equal Protection Clause reaches only state actors, [] § 1983 equal protection claims may be brought against individuals as well as municipalities and certain other state entities." *Fitzgerald, supra,* 555 U.S. at 257, 129 S.Ct. at 796, citing *West v. Atkins,* 437 U.S. 42, 48-51, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

same-sex claims are viable under Title IX as they are under Title VII. [] The Court believes the precedent above supports that conclusion.") *with Levarge v. Preston Bd. of Education,* 552 F.Supp.2d 248 (D. Conn. 2008) (recognizing that Title IX applies to a male student alleging student-on-student harassment).

C.   **Statute of Limitations**.   "'All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought.'" *Flood v. City of Jacksonville,* 263 F.Supp.3d 1213, 1218 (N.D. Ala. 2017), quoting *McNair v. Allen,* 515 F.3d 1168, 1173 (11th Cir. 2008).  In addition, because "Congress did not provide a statute of limitations for Title IX, the 'most closely analogous' statute of limitations under state law governs the federal cause of action[,]" *M.H.D. v. Westminister Schools,* 172 F.3d 797, 803 (11th Cir. 1999), citing *Reed v. United Transp. Union,* 488 U.S. 319, 323, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989), and "[c]ourts generally agree that a Title IX claim for damages is most closely analogous to a common law action for personal injury[,] such that "the statute of limitations for personal injury actions controls." *Id.* (citations omitted). In Alabama, the governing limitations period for personal injury actions is two years. *Compare Flood, supra,* 263 F.Supp.3d at 1218 *with McNair,* 515 F.3d at 1173 and Ala.Code § 6-2-38; *see also Hurt v. Shelby County Bd. of Educ.,* 198 F.Supp.3d 1293, 1315 (N.D. Ala. 2016) ("Both Title IX and section 1983 actions filed in this district are governed by Alabama's personal injury statute of limitations, ALA.CODE § 6-2-38(l).").

Here, Fick's claims involve purported conduct by the Defendants causing him damage for the period 1997 through 2001 (Doc. 35, at 2-3) and because he did not institute this action until 2018 (*compare id. with* Doc. 1 (initial complaint filed on January

9, 2018)), his claims against the Defendants are undeniably time-barred.[9] However, in light of Fick's various statements in his responses in opposition (*compare* Doc. 45, at 2 & 4 (Plaintiff's indication that in a perfect world in which the state government had provided him with a safe school environment this lawsuit would not be necessary and his further comment that the Defendants are trying to prevent him from receiving justice) *with* Doc. 46, at 4 (Plaintiff's statement that the Defendants are improperly focusing upon "what is available" to avoid the truth and justice)) as well as his motion for equitable tolling (Doc. 50),[10] the undersigned will consider whether Plaintiff is entitled to equitable tolling of the two-year statute of limitations, an inquiry which requires the Court to consider "Alabama's standards for equitable tolling[.]" *Hurt, supra,* 198 F.Supp.3d at 1315, citing *Neelley v. Walker,* 67 F.Supp.3d 1319, 1326 n.4 (M.D. Ala. 2014). To this end, "'"a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way as to the filing of his action."'" *Id.* at 1315-1316, quoting *Ex parte CVS Pharmacy, L.L.C.,* 209 So.3d 1111, 1117 (Ala. 2016), in turn quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005).[11]

---

[9]     Indeed, Plaintiff does not argue otherwise. (*Compare* Docs. 45 & 46 *with* Doc. 50.)

[10]     The undersigned observes that Fick's motion for equitable tolling was filed after his responses in opposition were due (*compare* Doc. 50 (motion filed on September 27, 2018) *with* Docs. 40 & 43 (requiring Plaintiff's responses in opposition to be filed not later than September 17, 2018 and September 19, 2018)) and though reference to the motion is contained in one of those responses (*see* Doc. 46) the movant nowhere in his motion explains why it was not filed contemporaneously with either response nor does he request leave of court to file the motion out-of-time (*see* Doc. 50); therefore, his motion (Doc. 50) should arguably be **stricken**.

[11]     Given that this is the correct articulation of the applicable standard for equitable tolling of the two-year limitations period, *see Hurt, supra,* Fick's citation to and reliance upon the five-factor equitable tolling standard applicable to FLSA claims recognized in *Green v. Harbor* (Continued)

Based on the contents of Fick's amended complaint, it is all too clear that Plaintiff was subjected to harassment from his fellow schoolmates on the basis of his sexual orientation and he specifically observed that this harassment was not remedied as far back as 2001, if not before, and was cognizant of his injuries during that time period (*see* Doc. 35, at 2-3 (setting forth various instances of harassment and specifically noting that "[d]uring the tenth grade ('00-'01) [he] was hospitalized for two weeks, in the Baptist Adolescent Stress Unit, and received a diagnosis for anxiety")). There is nothing to suggest, in the amended complaint (Doc. 35), Plaintiff's responses in opposition (Docs. 45-46), or Fick's motion for equitable tolling (Doc. 50), that either Defendant in any manner kept him from filing his action within two years of the occurrence of the harassment/bullying about which he complains; rather, it was Fick's own dilatoriness[12] that led to this action being initiated in 2018. Accordingly, because Fick has established neither prong of the equitable tolling standard, he is not entitled to equitable tolling of

_____

*Freight Tools USA, Inc.,* 888 F.Supp.2d 1088, 1107 (D. Kan. 2010) (*see* Doc. 50, at 1 & 2) is obviously not applicable.  As a consequence, the undersigned does not attempt to decipher or address Plaintiff's confusing arguments with respect to the first two factors set out in *Green* (*see id.* at 2), or his perfunctory argument with respect to *Green*'s fourth factor (*see id.*), as those factors have no application here.

[12]    In his motion for equitable tolling, Fick references the fact that when taking online courses at the University of Phoenix early in 2017, he "learned a lot about [] Education in America, and the standard of values associated with it[]" (Doc. 50, at 2) and "links" this reference/argument to the third *Green* factor of "diligence in pursing rights" (*compare id. with id.* at 1). This argument, however, does not satisfy Plaintiff's burden of establishing that he has been pursuing his rights diligently as it does not answer why he did not file an action against the Defendants within the two years after he left school in 2001, at a time when the facts surrounding the harassment he suffered at the hands of fellow students and his injuries— including, failing grades, physical pain and hospitalization for anxiety—were most fresh.

the two-year statute of limitations; therefore, the amended complaint filed on August 9, 2018 (Doc. 35) is time-barred and due to be **DISMISSED WITH PREJUDICE**.[13]

**D.    ALDOE and Sovereign Immunity Respecting Plaintiff's § 1983 Claims.**   Although the foregoing statute of limitations recommendation takes care of Plaintiff's amended complaint in its entirety, since the undersigned is entering a report and recommendation in this matter, the following additional analysis (although not necessary) is also offered. The Alabama State Department of Education, as a state agency (*see* Doc. 39, at 2, citing Ala.Code § 16-2-1[14]), also invokes the sovereign immunity of the state of Alabama and moves to dismiss Fick's complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) (*see id.* at 1, 2 & 3-4). *See Bennett v. United States,* 102 F.3d 486, 488 n.1 (11th Cir. 1996) (recognizing that dismissal pursuant to sovereign immunity is jurisdictional and should be analyzed under the framework of Rule 12(b)(1)).[15] As set forth by this Defendant (Doc. 39, at 3-4), Alabama's constitution spells out the state's sovereign immunity in Article I, § 14, which states "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." Ala.Const. Art. I, § 14. In addition, the Eleventh Amendment, which

---

[13]    In so finding, the undersigned does not mean to suggest that this Court has no empathy for Fick's experiences while attending Scarborough Middle School and Shaw High School; however, at the same time, there is simply no basis upon which to hold the Defendants liable in damages to Plaintiff at this late date.

[14]    "There shall be a Department of Education, which shall be under the direction of the State Superintendent of Education with the advice and counsel of the State Board of Education." Ala.Code § 16-2-1(a).

[15]    Motions to dismiss under Rule 12(b)(1) may take the form of a facial or factual attack. *Scarfo v. Ginsberg,* 175 F.3d 957, 960 (11th Cir. 1999), *cert. denied,* 529 U.S. 1003, 120 S.Ct. 1267, 146 L.Ed.2d 217 (2000). Under a facial attack, which is the case here (*see* Doc. 39), the allegations in the complaint are taken as true for purposes of the motion. *Sea Vessel, Inc. v. Reyes,* 23 F.3d 345, 347 (11th Cir. 1994) (citation omitted).

specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State[,]" U.S. Const. Amend. XI, has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (citation omitted); *see also Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."). Stated somewhat differently, the Eleventh Amendment prohibits suits for damages against a state by citizens of that state or another state, absent a waiver by that state. *See Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985).

These principles act as a bar to Fick's § 1983 claims against ALDOE, as this agency is an arm of the state for purposes of sovereign immunity, s*ee Brooks v. Alabama State Dep't of Education,* 2018 WL 3745823, *2 (M.D. Ala. Aug. 7, 2018) (recognizing that ALDOE is a department—or arm—of the state for purposes of Eleventh Amendment sovereign immunity),[16] and, therefore, ALDOE's alternative Rule

---

[16]     The Supreme Court has recognized three limited exceptions to the rule barring § 1983 actions against a state, a state agency, or state officials sued in their official capacity. The first exception is when a state has waived its Eleventh Amendment sovereign immunity and has consented to suit in federal court. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985), *superseded by statute on other grounds as stated in Brennan v. Stewart,* 834 F.2d 1248, 1260 n.22 (5th Cir. 1988). This exception does not apply here because the State of Alabama has not waived its immunity to suit in § 1983 cases, *see Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978), the Alabama Constitution explicitly stating (as aforesaid) that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14; *see also, e.g., Patterson v. Gladwin Corp.,* 835 So.2d 137, 142 (Ala. 2002) ("This immunity may not be waived.").

     The second exception is when Congress has properly abrogated sovereign immunity through its powers under the Fourteenth Amendment; however, such an abrogation has not
(Continued)

12(b)(1) motion to dismiss for want of subject-matter jurisdiction is due to be **GRANTED**. On this alternative basis, Fick's § 1983 claims against ALDOE should be **DISMISSED WITH PREJUDICE**.[17]

**E.**   **Complaint Does Not State a Claim Against Either Defendant.**   As reflected above, Fick has sued the ALDOE and the Board of School Commissioners of Mobile County under 42 U.S.C. § 1983 and 20 U.S.C. § 1681. To be successful on a § 1983 claim, a plaintiff must establish that he suffered a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States and that the act or omission causing the deprivation was committed by a person acting under color of state law. *Wideman v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030, 1032 (11th Cir. 1987); *see also Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68

---

occurred with respect to § 1983 claims. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55-72, 116 S.Ct. 1114, 1123-32, 134 L.Ed.2d 252 (1996); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990). The third exception, established under *Ex parte Young*, recognizes that the Eleventh Amendment does not bar § 1983 actions against state officials when the action seeks prospective injunctive relief to end continuing violations of federal law. *See Ex parte Young*, 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908); *see also Seminole Tribe of Fla.*, 517 U.S. at 73, 116 S.Ct. at 1132 (citation omitted); *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999), *cert. denied,* 529 U.S. 1012, 120 S.Ct. 1287, 146 L.Ed.2d 233 (2000).

As noted in *Summit Medical*, "[b]ecause of the important interests of federalism and state sovereignty implicated by *Ex parte Young* ... the doctrine is not without limitations." 180 F.3d at 1337.  One limitation is that "the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law." *Id.* (citation omitted).  "A plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Id.* In the instant suit, Plaintiff seeks only monetary damages for past conduct. Because he has not asserted a claim for injunctive relief to end continuing violations of federal law, the *Ex parte Young* exception does not apply.

[17]    Of course, if this Court need reach this far in its analysis, ALDOE cannot claim Eleventh Amendment immunity with respect to Fick's Title IX claims because Congress abrogated States' Eleventh Amendment immunity under Title IX. *Gebser v. Lago Vista Independent School District,* 524 U.S. 274, 284, 118 S.Ct. 1989, 1996, 141 L.Ed.2d 277 (1998).

L.Ed.2d 420 (1981) ("[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 80 L.Ed.2d 662 (1986). Here, Fick alleges that the ALDOE and the Board of School Commissioners of Mobile County violated his Fourteenth Amendment equal protection rights. And in order to establish a § 1983 equal protection claim, Plaintiff must show: (1) that he is similarly situated with other persons who were treated differently than him, and (2) that the reason for the different treatment was based on race, religion, national origin, poverty or some other constitutionally protected interest. *See Damiano v. Florida Parole and Probation Comm'n,* 785 F.2d 929, 932-33 (11th Cir. 1986) (citation omitted). "'Proof of [] discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'" *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991), quoting *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 264-65, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

A fair reading of Fick's amended complaint (Doc. 35) does not reveal any factual allegations against the ALDOE or the Board of School Commissioners of Mobile County that allow this Court to draw a reasonable inference that either Defendant could in any manner be held liable under § 1983 for a violation of Fick's equal protection rights on account of the alleged bullying, harassment and abuse Plaintiff suffered while attending various public schools in Mobile County from 1997 through 2001. Indeed, the amended

complaint (Doc. 35, at 2-3) is totally devoid of any factual allegations directed to either of the foregoing Defendants and does not even purport to set out any information about similarly-situated persons being treated differently from him and that the reason for the different treatment was his sexual orientation; therefore, this Court has absolutely no factual basis upon which to conclude that either Defendant deprived Fick of his equal protection rights. In other words, Plaintiff has simply not set forth sufficient factual allegations directed to the two named Defendants to raise his right to relief "above the speculative level[.]" *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965; *see also GeorgiaCarry.Org, Inc., supra,* 687 F.3d at 1254 (recognizing that a plaintiff must include in his complaint "factual allegations for each essential element of his . . . claim."). Accordingly, Plaintiff's amended complaint (Doc. 35) does not state a § 1983 claim for relief against either named Defendant and is properly **DISMISSED** in accordance with Rule 12(b)(6).

As for Plaintiff's probable Title IX claims, it is clear that Fick may recover damages for student-on-student harassment if he establishes the following four elements: "(1) the defendant is a Title IX funding recipient; (2) an 'appropriate person' had actual knowledge of the discrimination or harassment the plaintiff alleges occurred;[18] (3) the funding recipient acted with deliberate indifference to known acts of harassment in its programs or activities; and (4) the discrimination is 'so severe, pervasive, and objectively offensive that it effectively bars the victim's access to educational opportunity or benefit.'" *Doe v. Bibb County School District,* 688 Fed.Appx.

---

[18]   "'An "appropriate person" . . . is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination.'" *Doe, infra,* 688 Fed.Appx. at 795, quoting *Gebser, supra,* 524 U.S. at 290, 118 S.Ct. at 1999.

791, 795 (11th Cir. May 22, 2017) (citations omitted; footnote added).

In this case, the initial problem with Fick's amended complaint is that nowhere does he allege that either Defendant is a Title IX funding recipient and while there is, undoubtedly, an easy "fix" to this deficiency, the same cannot be necessarily said with respect to any of the other three elements. In particular, with respect to Fick's 7th grade Scarborough Middle School allegations, there is no identification of an "appropriate person" who had knowledge of the harassment, no allegation that the Defendants were deliberately indifferent to known acts of harassment in its programs or activities, and no allegation that the discrimination/harassment was so severe, pervasive, and objectively offensive that it effectively barred his access to educational opportunity or benefit. Moreover, with respect to the first two ninth grade purported harassment "incidents" (*see* Doc. 35, at 2), Plaintiff's representations that school officials expelled the two homosexual males who sexually harassed him (*id.*) belies both the deliberate indifference and "severe and pervasive" elements. And the final allegation regarding bullying in his ninth grade Biology class (*see id.* at 3) is too terse and unspecific for the undersigned to find that Plaintiff has pled sufficient factual content to establish the third and fourth elements of a student-on-student harassment claim under Title IX. The same is true of Fick's tenth grade bullying allegations in his Algebra class (*see id.* ("There would be times I would be physically hit, and/or crudely insulted by a student and the teacher would just overlook the incidents.")); there is no specific identification of the harasser or teacher and not enough factual content to establish either the Defendants' deliberate indifference or that the behavior directed at Fick was so severe, pervasive, and objectively offensive that it had the systemic effect of denying him equal access to

education. *See, e.g., Hawkins v. Sarasota County School Bd.,* 322 F.3d 1279, 1288 (11th Cir. 2003) ("When interacting with each other, children often exhibit behavior that would be wholly unacceptable between adults. 'The real world of school discipline is a rough-and-tumble place where students practice newly learned vulgarities, erupt with anger, tease and embarrass each other, share offensive notes, flirt, push and shove in the halls, grab and offend.' . . . In the school setting, students often engage in insults, teasing, shoving, and gender-specific conduct that is upsetting to the student subjected to it. Damages are not available for simple acts of teasing and mere name-calling among school children even where these comments target differences in gender."). Accordingly, Plaintiff's amended complaint (Doc. 35) does not state a Title IX student-on-student harassment claim against either named Defendant and is properly **DISMISSED** in accordance with Rule 12(b)(6).

## CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that the motions to dismiss filed by the named Defendants (Docs. 39 & 41) be **GRANTED**. Indeed, because Fick's § 1983 and Title IX claims against the Defendants are indisputably time-barred, his amended complaint (Doc. 35) should be **DISMISSED WITH PREJUDICE**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule

3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 28th day of September, 2018.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**